UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

EARL ARNOLD #308227,

     Plaintiff,

                       No. 5:16-cv-13403

v

                       HON. JUDITH E. LEVY

HUTCHINSON and R.
HARBAUGH,
                       MAG. MONA K. MAJZOUB

     Defendants.

_____

| | |
|---|---|
| Earl Arnold #308227 | David Hoort (P28492) |
| *In Pro Per* | Assistant Attorney General |
| Hornes Boarding House | Attorney for MDOC Defendant |
| 1501 Dupont St. | Civil Litigation, Employment & |
| Flint, MI  48504 | Elections Division |
| | P.O. Box 30736 |
| | Lansing, MI 48909 |
| | 517.373.6343 |

_____/

**MDOC DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT BASED ON
PLAINTIFF'S FAILURE TO
EXHAUST ADMINISTRATIVE REMEDIES
<u>AND GOVERNMENTAL IMMUNITY</u>**

    Defendant Richard Harbaugh (MDOC Defendant), through the

undersigned attorney, bring this motion under Fed. R. Civ. P. 56(a), for

summary judgment, based on the grounds set forth in Defendant's

accompanying brief.

Concurrence in this motion has not been sought because Plaintiff is an incarcerated prisoner proceeding *pro se*.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/David Hoort*
David Hoort
Assistant Attorney General
Attorney for Defendant Bastian
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI 48909
517.373.6434
hoortd@michigan.gov
[P28492]

Dated:  December 5, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

EARL ARNOLD #308227,

     Plaintiff,

                               No. 5:16-cv-13403

v

                               HON. JUDITH E. LEVY

HUTCHINSON and R.
HARBAUGH,                      MAG. MONA K. MAJZOUB

     Defendants.

_____

Earl Arnold #308227
*In Pro Per*
Hornes Boarding House
1501 Dupont St.
Flint, MI  48504

David Hoort (P28492)
Assistant Attorney General
Attorney for MDOC Defendant
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI 48909
517.373.6343

_____/

**BRIEF IN SUPPORT OF MDOC DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## CONCISE STATEMENT OF ISSUE PRESENTED

I.     A Defendant is entitled to summary judgment as a matter of law when the record reveals that there are no genuine issues as to any material fact in dispute.

II.    A prisoner must exhaust his administrative remedies through all steps of the grievance process before filing a complaint under 42 U.S.C. § 1983.  "Proper exhaustion" is required using all of the steps that the agency holds out, and doing so properly.  Should this Court grant summary judgment with regards to any claims where Plaintiff has not properly exhausted his administrative remedies?

III.   State employees are entitled to absolute governmental immunity under the Eleventh Amendment when acting in their official capacity and qualified immunity when sued in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Should this Court grant summary judgment on the basis of governmental immunity?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).

*Woodford v. Ngo*, 548 U.S. 81 (2006)(Exhaustion requires "proper exhaustion," using all steps that the agency holds out, and doing so properly).

The Eleventh Amendment provides jurisdictional immunity to state officials when the state is literally the party in interest. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). A suit against state officials that is, in fact, a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02, and claims against the Michigan Department of Corrections are barred by the Eleventh Amendment. *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986).

The qualified immunity inquiry focuses on the "objective reasonableness" of the official's conduct. *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982), and provides protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The burden of proof is on the plaintiff to show that a defendant is *not* entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

## STATEMENT OF FACTS

This is a civil rights action filed *pro se* under 42 U.S.C. § 1983 by Earl Arnold, a prisoner under the supervision of the Michigan Department of Corrections (MDOC).  At all times relevant to this lawsuit, Plaintiff was incarcerated at the Gus Harrison Correctional Facility (ARF).  (Compl. R. 1, ¶ II, PageID.2.)

Plaintiff alleges constitutional violations relating to denial of treatment and deliberate indifference to a serious medical issue in violation of the American Disabilities Act and the Rehabilitation Act. (Compl. R. 1, ¶¶ 2-3, PageID.4.)

The Complaint alleges Plaintiff is diagnosed with Hepatitis; and Defendants Dr. Hutchinson, Director of Correctional Medical Services; Corizon Health Services; and Harbaugh, Bureau of Health Care Services, have denied him the treatment that he needs for this disease. (Compl. R. 1, ¶ 1, PageID.4.)

The Complaint specifically alleges Plaintiff has genotype 1 (Hepatitis), and Defendants Hutchinson and Corizon Health Services, and other medical staff are telling him he won't be treated until he reaches Genotype 3 or 4.  (Compl. R. 1, ¶ 1, PageID.4.)

1

The specific allegation against Defendant Harbaugh is that Harbaugh and Dr. Hutchinson "have a blanket policy of allowing patients condition to worsen by allowing disease to worsen to a deadly stage before treating." (Compl. R. 1, ¶ 2, PageID.4.)

The Step I grievance did not name Defendant Harbaugh. The Step II appeal complains about prison doctors and prison guards. The Step III appeal complains about MDOC. (MDOC Prisoner Step III Grievance Report, Exhibit 1).

## ARGUMENT

## I.   Summary judgment under Fed. R. Civ. P. 56(c).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining if summary judgment is appropriate is whether the evidence presents sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court considers

2

all pleadings, depositions, affidavits, and admissions on file, and draws

all justifiable inferences in favor of the party opposing the motion.

*Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### A.   Defendant is entitled to summary judgment as a matter of law.

Plaintiff alleges § 1983 constitutional claims relating to denial of

treatment and deliberate indifference to a serious medical issue in

violation of the American Disabilities Act and the Rehabilitation Act.

(Compl. R. 1, ¶¶ 2-3, PageID.4.)  The only specific allegation against

Defendant Harbaugh is that Harbaugh and Dr. Hutchinson "have a

blanket policy of allowing patients condition to worsen by allowing

disease to worsen to a deadly stage before treating."  (Compl. R. 1, ¶ 2,

PageID.4.)

A claim under § 1983 has two elements:  A defendant must be

acting under the color of state law, and the offending conduct must

deprive the plaintiff of rights secured by federal law.  *League of Women

Voters v Brunner*, 548 F.3d 463, 476 (6th Cir. 2008).  At issue here is the

second element.  A fundamental requirement underlying a § 1983 claim

is direct, personal involvement of the defendant.  Liability must be

based on more than merely the right to control employees.  *Polk Co. v.*

*Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978).  Liability cannot be based upon mere allegations of *respondeat superior*.   A defendant cannot be held liable under § 1983 absent a showing that she personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982).  In this case, there is no evidence, other than a bare assertion, that Defendant Harbaugh personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  Plaintiff's Complaint fails as a matter of law.

Plaintiff's theory of liability based on a 'blanket policy' resulting in a denial of treatment (Compl. R. 1, ¶ 2, PageID.4) also does not withstand summary judgment.  A 'blanket policy' theory of liability claim applies to municipalities, not individuals.  See *Monell, Id*. (A § 1983 policy claim is justiciable as to municipalities and other local units of government, which may be sued for an "action that is alleged to be unconstitutional, implements or executes a policy statement, ordinance,

4

regulation, or decision officially adopted and promulgated by that body's officers.")

Defendant also points out that Title II of the ADA does not provide for individual capacity suits against state officials, *see* 42 U.S.C. § 1213(1), *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir. 2000); *Cox v. Correctional Med. Services, Inc.*, 06-cv-10350-BC, 2007 WL 2873208, at *7 (E.D. Mich. Feb. 20, 2007), *report and recommendation adopted in part,* 06-10350, 2007 WL 2873049 (E.D. Mich. Sept. 26, 2007).

### B.    Plaintiff failed to properly exhaust his administrative remedies.

Under 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA), a prisoner-plaintiff cannot bring a civil rights action challenging prison conditions without first exhausting all available administrative remedies:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

5

The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. The exhaustion requirement applies to Plaintiff's claims. In *Woodford v. Ngo,* 548 U.S. 81, 90 (2006), the Supreme Court held that the PLRA requires "proper exhaustion," which is determined by the inmate's compliance with the prison grievance procedures.

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thereby "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524.

Requiring proper exhaustion gives prisoners the incentive to fully use the grievance process and provides prison officials with a fair opportunity to correct their own errors. *Woodford,* 548 U.S. at 94. Doing so does not impair one's right to file grievances, but requires that a prisoner do so fairly. This is important in the interworking of the

prison system because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973).

A prisoner must exhaust all three steps of the grievance process. An inmate cannot simply fail to file a grievance, start but not finish or abandon the process before completion and claim that he has exhausted his remedies or that it is futile to do so because his grievance is now time-barred under a policy directive. Abandoning the grievance process, failing to comply with the procedural requirements or failing to exhaust every step of the process is not proper exhaustion. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

### 1.   The applicable MDOC grievance policy, PD 03.02.130.

The administrative process applicable to Plaintiff's claims is governed by MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances" (Effective date 07/09/2007). (Exhibit 2). The policy directive states, in pertinent part, as follows:

> E.   Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the

7

grievant, including alleged violations of this policy and related procedures.

\* \* \*

P.    Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.  If the complaint is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.

\* \* \*

R.    A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance.  The forms may be completed by hand or by typewriter however, handwriting must be legible.  The issues shall be stated briefly but concisely.  Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

\* \* \*

Step I

V.    Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office or other office being grieved....

8

* * *

<u>Step II</u>

BB.   A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response.  To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions.

* * *

<u>Step III</u>

FF.   A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

2.   **A prisoner must exhaust his administrative remedies through all steps of the grievance process before filing a complaint under 42 U.S.C. § 1983.**

In the grievance policy, discussed above, Step III grievances are

tracked:

9

GG.   The Grievance and Appeals Section shall be the respondent for Step III grievances on behalf of the Director.  Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system.  The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection.
(See Exhibit 2).

Any subjective belief by the prisoner as to what the outcome might have been had he properly pursued his administrative remedies does not excuse his failure to exhaust.  See *Thomas v. Woolum,* 337 F.3d 720, 733 (6th Cir. 2003) ("Exhaustion ... requires a plaintiff to bring a grievance to the state before coming to federal court even when the state has made clear that it will not grant the relief requested."); *Edwards v. Alabama Dep't. of Corrs.,* 81 F. Supp. 2d 1242, 1256–57 (M.D. Ala. 2000) ("Regardless of their chances of success using the defendants' grievance procedures, the PLRA requires the plaintiffs to exhaust them.").  To meet the PLRA exhaustion requirement, Plaintiff must demonstrate compliance with the MDOC grievance policies, including its deadlines and procedural rules.  *Woodford,* 548 U.S. at 90.

### 3.   No exhaustion per the MDOC Prisoner Step III Grievance Report.

Plaintiff's claim against Defendant Harbaugh should be dismissed because Plaintiff failed to file a Step I grievance against Defendant Harbaugh.  The Step III Grievance Report (Exhibit 1) reveals that Plaintiff did not name or actually even try to grieve Defendant Harbaugh.  Plaintiff's grievance and appeals instead addressed his medical providers and MDOC.  Even MDOC and responding officials considered this to be a grievance against the treatment providers and MDOC, not any named individual person.  (Exhibit 1).  And the Complaint is absent any specific allegations of wrong doing by Defendant Harbaugh other than a non-factual opinion that he is responsible for a blanket policy preventing Plaintiff from timely receiving treatment for his Hepatitis.  (Compl. R. 1, ¶ 2, PageID.4.)  Plaintiff's failure to file a grievance against Defendant Harbaugh and notify MDOC he had been subjected to possible wrongs by Defendant Harbaugh denied MDOC and Harbaugh the opportunity to address his complaints or prepare a useful record for this Court.  *Davison v. MacLean*, CIV. A. 06-12755, 2007 WL 1016980, at *2 (E.D. Mich. Mar. 30, 2007).

Under MDOC Policy Directive (Exhibit 2), the failure to name a defendant in a grievance, although not a direct violation of the PLRA, does mandate dismissal because it violates the state's policy directive procedural requirements. *Jones v. Bock,* 549 U.S. 199, 218 (2007) *(*a prison's procedural rules might impose a naming requirement and proper exhaustion requires compliance with those rules—rules that are defined not by the PLRA, but by the prison grievance process itself.) See *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014) (The grievance officer would naturally have inferred the prisoner was complaining about the medical treatment.) See also *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *7 (E.D. Mich. March 31, 2016); *Koetje v. Norton*, 13-cv-12739, 2014 WL 4705432, at *4 (E.D. Mich. June 18, 2014), *report and recommendation adopted,* 13-12739, 2014 WL 4705446 (E.D. Mich. Sept. 22, 2014) (Plaintiff's failure to name or identify the Defendant in any grievance taken through Step III is also fatal and reveals that the exhaustion requirement has not been satisfied.)

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined

12

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The prisoner must complete all levels of the grievance process before filing an action in federal court. *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999).

A dismissal of the claim against Defendant Harbaugh is fair. Neither the Complaint or Plaintiff's grievance and appeals specifically allege that Defendant Harbaugh is responsible or played any role in Plaintiff's alleged harm. Plaintiff's complaint, then and now, is with the treatment providers determining his course of treatment, and MDOC. Plaintiff's non-compliance with the PLRA should not render meaningless the clear requirement of the Act, and his procedural obligations—Step I through Step III of the grievance process. Plaintiff has failed to exhaust his administrative remedies as to Defendant Harbaugh.

## II.   Defendant is entitled to Eleventh Amendment and Qualified immunities.

### A.   Eleventh Amendment absolute Immunity.

The Eleventh Amendment bars any suit, absent consent, against the state:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

The Supreme Court has held that the Eleventh Amendment's fundamental principles of sovereign immunity negate federal exercise of jurisdiction over suits by citizens against their own states as well. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Mumford v. Basinski*, 105 F.3d 264, 267 n.3 (6th Cir. 1997). A "suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office." *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). MDOC Defendant Harbaugh, an employee of the State of Michigan, cannot be sued in his official capacity. The State of Michigan has not consented to suit, and the Defendant is entitled to Eleventh Amendment immunity in his official capacity.

## B.    Qualified immunity.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing

litigation.  See *Davis v. Scherer,* 468 U.S. 183, 195, 104 S. Ct. 3012, 82
L.Ed.2d 139 (1984).  As recognized, governmental officials can only do
so if they reasonably can anticipate when their conduct may give rise to
liability for damages, and unjustified lawsuits are quickly terminated.
*Id.*  Generally, when government officials perform discretionary
functions, they are shielded from liability for civil damages insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known.
*Taylor v. Lantagne*, 1:07-cv-1233, 2015 WL 5174057, at *3 (W.D. Mich.
Sept. 3, 2015).

Officials or employees of the Michigan Department of Corrections
sued in their individual capacities "are shielded from liability for civil
damages insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would
have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Dietrich
v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Noble v. Schmitt*, 87
F.3d 157, 160 (6th Cir. 1996).

While state defendants bear the initial burden of presenting facts
that, if true, would entitle them to immunity, the burden of proof is on a

plaintiff to show that a State defendant violated a right so clearly

established that any official in the defendant's position would have

clearly understood he was under an affirmative duty to refrain from

such conduct. *Noble*, 87 F.3d at 161. State Defendants are entitled to

qualified immunity unless a plaintiff's rights are so clearly established

when the acts were committed, that any officer in defendant's position,

measured objectively, would have clearly understood that he or she was

under an affirmative duty to have refrained from such conduct.

*Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir. 1987). If officials of

reasonable competence could disagree on whether the conduct violated

the plaintiff's rights, a defendant is entitled to qualified immunity.

*Caldwell v. Woodford County Chief Jailor*, 968 F.2d 595, 599 (6th Cir.

1992). In resolving a government official's qualified immunity claims,

Courts look to whether (1) the facts that the plaintiff has alleged or

shown establish the violation of a constitutional right, and (2) the right

at issue was clearly established at the time of the alleged misconduct.

*Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d

565 (2009). In the evaluation whether a constitutional right was clearly

established, the key determination is whether a defendant was on

notice that his or her alleged actions were unconstitutional.  *Grawey v. Drury,* 567 F.3d 302, 313 (6th Cir. 2009).

Plaintiff alleges constitutional violations relating to denial of treatment and deliberate indifference to a serious medical issue in violation of the American Disabilities Act and the Rehabilitation Act. (Compl. R. 1, ¶¶ 2-3, PageID.4.)  The bare allegations in Plaintiff's Complaint, however, as to Defendant Harbaugh, fail to establish any violation of clearly established law or that Plaintiff's constitutional rights were violated by Defendant Harbaugh.  See *Center for Bio–Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 831 n.16 (6th Cir. 2007).  (One cannot defeat qualified immunity by leveling bare allegations of malice against government officials.)

Defendant Harbaugh is entitled to qualified immunity. Plaintiff's Complaint alleges no specific facts of wrongdoing by this Defendant. See *Frazier v. State of Michigan,* 41 Fed. Appx. 762 (6th Cir. 2002) (complaint contained no specific facts in support of his conclusory allegations and failed to allege with any specificity which of the named defendants were personally involved in or responsible for the alleged violations of his federal rights.)  According to Plaintiff's Complaint, his

grievance and appeals, his issues were with his medical providers and the MDOC.  Defendant Harbaugh is a Clinical Assistant to the Chief Medical Officer for the Bureau of Health Care Service.  His only involvement was to approve the Step III Grievance Appeal Response. (Defendant's Affidavit, Exhibit 3).  There is no indication he was Plaintiff's treatment provider or that as a Clinical Assistant Defendant Harbaugh would be responsible for MDOC policy.  Defendant Harbaugh should receive the benefit of governmental immunity.  See *Gardner v. Michigan Dep't. of Corrections*, 2:16-cv-3, 2016 WL 909420, at *4 (W.D. Mich. Mar. 10, 2016) (The only roles that Defendants Unknown Bureau of Healthcare Services Administrator had in this action involve the denial of administrative grievances or the failure to act.)

Although it is apparent that Plaintiff disagreed with the course of treatment, which does not establish a constitutional violation.  Plaintiff cannot even establish that the complained-of decisions were conclusively wrong.  This Court should not second guess medical judgments.  *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976).

The record clearly does not support a finding that Defendant Harbaugh knew or should have known that his own actions were

18

objectively unreasonable.  The Plaintiff's course of treatment and treatment decisions would have been based on medical information in his file, and decisions made by his treatment providers.

Defendant is entitled to governmental immunity.  Plaintiff has not and cannot show that Defendant violated clearly established law or that Defendant actually, wrongfully did the act(s) complained of by the Plaintiff, and of which a reasonable person would have known.

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, MDOC Defendant Harbaugh requests this Court grant his motion for summary judgment, because Plaintiff failed to properly exhaust his administrative remedies and the

Defendant is entitled to Eleventh Amendment and qualified

governmental immunity.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/David Hoort*
David Hoort
Assistant Attorney General
Attorney for Defendant Bastian
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
Lansing, MI 48909
517.373.6434
hoortd@michigan.gov
[P28492]

Dated:  December 5, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016, I electronically filed the
foregoing paper with the Clerk of the Court using the ECF system
which will send notification of such.  I also mailed the foregoing paper
via US Mail to all non-ECF participants:

Earl Arnold #308227
Hornes Boarding House
1501 Dupont St.
Flint, MI  48504                          */s/ David Hoort*
                                          David Hoort
                                          Assistant Attorney General
                                          Attorney for MDOC Defendant

20