UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL ARNOLD,

       Plaintiff,                      CIVIL ACTION NO. 16-cv-13403

       v.                             DISTRICT JUDGE JUDITH E. LEVY

CRAIG HUTCHISON, M.D.,         MAGISTRATE JUDGE MONA K. MAJZOUB
and RICHARD HARBAUGH, R.N.

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Earl Arnold, a former prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan,[1] filed this *pro se* civil rights action against Defendants R. Harbaugh, a registered nurse and employee of the Michigan Department of Corrections ("MDOC"), and Dr. Craig Hutchison, the Director of Correctional Medical Services for Corizon Health Services, a contractor of MDOC. (Docket no. 1.) Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs by not properly treating his hepatitis C, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. §§ 701–718. (Docket no. 1 at 4.) Specifically, he claims that Defendants "have a blanket policy of allowing patient[']s condition to worsen to a deadly stage before treating." (*Id.*) He also alleges that Defendants' failure to properly treat his Hepatitis constitutes a "depriv[ation] of a right secured by the Federal Constitution," and appears to assert a claim under 42 U.S.C. §

---

[1] Plaintiff is now residing at the Hornes Boarding House in Flint, Michigan. (Docket no. 8.)

1

1983. (*Id.* at 4, 6.) Finally, near the end of his Complaint, Plaintiff writes, "[m]ay I add to this claim a medical malpractice claim." (Docket no. 1 at 11.)

Plaintiff sues Defendants in their individual and official capacities, and seeks $500,000 in damages. He also asks the Court to: 1) order "the production of the (CDC) Center for Disease Control's essential treatment protocols" and the "Medical Associations current preeminent treatment protocols," and 2) order "Dr. Hutchison, and R. Harbaugh to immediately start proper treatment . . . and to change the current policies in place that cause[] present and future Hepatitis C patients to wait until their disease is causing cirrhosis before treatment." (*Id.* at 5.)

Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant Harbaugh's Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies and Governmental Immunity (docket no. 14).[2] All pretrial matters have been referred to the undersigned for consideration. (Docket no. 9.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

I. RECOMMENDATION

For the reasons that follow, it is recommended that the Court **DENY** Plaintiff's Motion for Summary Judgment [12], and **GRANT** Defendant Harbaugh's Motion for Summary Judgment [14]. All claims against both Defendants in their individual capacities arising under the ADA and the Rehabilitation Act should be **DISMISSED**. All remaining claims against Defendant Harbaugh should also be **DISMISSED**.

II. REPORT

A. Factual Background

---

[2] Also before the Court are Plaintiff's Motion to Release all Medical Records (docket no. 11), and Defendant Craig Hutchison, M.D.'s Motion to Compel Discovery from Plaintiff (docket no. 22), which the undersigned has addressed in a separately-issued Order.

Plaintiff asserts that he has type 1 hepatitis C, an infectious disease which causes primarily liver damage. He further asserts that MDOC has a policy of administering certain types of medication only to those prisoners with more serious types of the disease. (Docket no. 1 at 4.) Plaintiff attaches a series of prison grievances and appeals to his Complaint, which show that Plaintiff initially filed a prison grievance concerning his hepatitis treatment, or lack thereof, on December 29, 2015. (*Id.* at 13.) MDOC officials denied the grievance, explaining:

> Grievant is being evaluated, treated, has had diagnostic testing conducted and is being monitored by the MP [Medical Provider]. The MP is responsible for determining the most appropriate course of treatment for their patients taking into consideration all information available. The MP's treatment plan for the grievant demonstrates that was and is being done in this case. A disagreement with the medical judgment of the MP does not support a claim that the treatment is being denied. Grievant is encouraged to access health care through the health care request process to address any current health care concerns.

(*Id.* at 14.)

Plaintiff appealed that decision to Step II, and in response to the appeal, MDOC officials further explained, "[y]our Hep C has been regularly monitored by the MP. The stage/grade of your condition does not require treatment. Your most recent labs indicate that your liver enzymes have improved over previous values." (*Id.* at 17.) The Step II Appeal response also explained MDOC's system for treating hepatitis patients and how it pertains to Plaintiff:

> The Hepatitis C treatment in the Michigan DOC's now 15 slot program in which slots are filled in order of severity of liver disease and treatment is focused on patients with advanced fibrosis which means stage 3 or 4 on a 0–4 scale. [Plaintiff's] MP Plan; labs prior to next appointment, which is 6 months from the last C3 appt — please watch for call out(s), as labs are scheduled in the beginning of March and the MP appointment is scheduled within 2 weeks of lab draw.
>
> Healthy adults have lots more liver than they need, and the liver can regenerate substantially. To avoid running low or running out, MI DOC will offer regular blood testing to evaluate the liver. If these tests indicate that advanced fibrosis (stage 3 or 4) is likely to occur (which may or may not never [sic] happen), or substantial HCV-related disease outside the liver you will be considered for treatment. . . . .

3

(*Id.* at 17.) Plaintiff appealed that denial to Step III, but the Step III appeal was also denied, on May 12, 2016. The Step III grievance response reiterates that Plaintiff "will continue to be monitored based upon his medical needs and expressed concerns." (*Id.* at 19.) Defendant Harbaugh signed the Step III grievance response on behalf of the MDOC Bureau of Health Care Services. (*Id.*) Plaintiff then filed suit on September 19, 2016.

**B. Governing Law & Analysis**

   *1.   Plaintiff's Motion for Summary Judgment [12]*

Plaintiff filed a Motion for Summary Judgment on November 12, 2016. (Docket no. 12.) The entire Motion consists of two sentences: "I Earl Arnold #308227 would like to move for motion for Defendants to give summary judgment. Thank you." (Docket no. 12.) With no recitation of facts or law, or any kind of argument, Plaintiff's Motion should be denied. It is not the role of the court to make an argument on Plaintiff's behalf or to identify facts that support his arguments, even if he is proceeding *pro se*. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and internal quotation marks omitted)).

   *2.   Plaintiff's ADA and Rehabilitation Act claims*

In his Complaint, Plaintiff asserts that he "would like to sue under the American Disability Act and the Rehabilitation Act." (Docket no. 1 at 4.) The Sixth Circuit has expressly held that a person "may not maintain an action under the ADA or the RA against . . . individual defendants . . . because neither the ADA nor the RA impose liability upon individuals." *Lee v. Mich. Parole Bd.*, 104 Fed. App'x 490, 493 (6th Cir. 2004) (citing 29 U.S.C. § 794(b); 42 U.S.C.

4

§ 12131(1)). The court should therefore dismiss the individual capacity ADA and Rehabilitation Act claims against both Defendants.

   3.  *Defendant Harbaugh's Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies and Governmental Immunity [14]*

     *a. Summary judgment standard*

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole

presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### b. *The PLRA exhaustion of administrative remedies requirement*

Defendant Harbaugh argues that the claims against him should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit, a requirement under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation omitted).

MDOC's administrative policies (*see* docket no. 14-3) require a prisoner to file a Step I grievance within five days of attempting to informally resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). The grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). MDOC is required to respond within fifteen business days, unless an extension is granted. MDOC Policy Directive 03.02.130(X). If the prisoner is dissatisfied with the Step I response, he

may file an appeal, referred to as a Step II grievance, within ten business days of receipt of the response or, if no response is received, "within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form [], to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due . . . ." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved "through all three steps of the grievance process in compliance with [the] policy." MDOC Policy Directive 03.02.130(B).

In this case, Plaintiff did follow the procedure for exhausting his administrative remedies by filing a Step 1 grievance, and appealing the denial of his grievance all the way through Step III. The problem in Plaintiff's case is that Defendant Harbaugh is not mentioned anywhere in the grievances, which is a requirement under MDOC Policy Directive 03.02.130(R). (*See* docket no. 14-3 at 5.)

This defect—the failure to specifically mention Defendant Harbaugh in his grievance— would not necessarily be fatal to Plaintiff's claims against Defendant Harbaugh if it was otherwise apparent from the grievances or Plaintiff's Complaint that Defendant Harbaugh played some role in Plaintiff's hepatitis treatment or was somehow responsible for either the formulation or the administering of MDOC's triage-style hepatitis treatment program. But in his Step I grievance, Plaintiff simply states he "spoke with [a] nurse and was told they would not

treat me."[3] (Docket no. 1 at 13.) In his Complaint, Plaintiff does specifically state that "Dr. Hutchison, Corizon Health Services, and R. Harbaugh ha[ve] denied me the treatment that I need for this disease," and that Defendant Harbaugh and Defendant Hutchison have a "blanket policy of allowing patient[']s condition to worsen . . . to a deadly stage before treating." (*Id.* at 4.)

In support of his Motion, Defendant Harbaugh submits an affidavit in which he states that he is a "Registered Nurse and Clinical Assistant to the Chief Medical Officer for the Bureau of Health Care Service," and that:

> In this case I approved the Step III Grievance Appeal Response relating to Plaintiff's grievance and complaint that he was being denied treatment for Hepatitis C. Upon my review of the electronic medical record, the Response to the Step I grievance and the Step II appeal appropriately addressed Plaintiff's grievance. The Medical Provider orders treatment based on his qualified judgment within proper guidelines. The records show that Plaintiff will continue to be monitored by the Infectious Disease Medical ID specialist, based on his needs and expressed concerns. With regards to treatment for Hepatitis C, the Medical Care Provider/Infectious Disease specialist determines any and all HCV treatments.

(Docket no. 14-4 at 2–3.) Plaintiff has not responded to Defendant Harbaugh's Motion, and the undersigned finds no evidence to contradict the statements in Defendant Harbaugh's affidavit. It other words, it is undisputed that Defendant Harbaugh did not determine the treatment plan about which Plaintiff complains, or even deny Plaintiff any medical care. Based on the affidavit, it appears that Defendant Harbaugh's role was limited to determining (along with a representative of the MDOC Office of Legal Affairs) the resolution of Plaintiff's Step III appeal. (Docket no. 1 at 19.) Plaintiff's Complaint is not at all based on MDOC's handling of his grievance. It is based on the denial of a specific type of medical care, which Defendant Harbaugh has shown he was not responsible for prescribing or administering. *See Shehee v. Luttrell*, 199 F.3d 295, 300

---

[3] The undersigned notes that MDOC officials went on to consider Plaintiff's grievance on the merits despite the fact that Plaintiff did not identify any specific MDOC personnel in his grievances in apparent violation of MDOC Policy Directive 03.02.130(R).

(6th Cir. 1999) (no § 1983 liability where prisoner's only claim against defendants "involve[d] the denial of administrative grievances or the failure to act").

For these reasons, the undersigned recommends that Defendant Harbaugh's Motion for Summary Judgment (docket no. 14) be granted.

   *4.*   *Plaintiff's "medical malpractice" claims against Defendant Harbaugh*

Finally, because the undersigned has recommended dismissal of all federal claims against Defendant Harbaugh, the undersigned further recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's state law medical malpractice claim against Defendant Harbaugh pursuant to 28 U.S.C. § 1367(c)(3). *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

**C. Conclusion**

For the reasons stated herein, it is recommended that the Court **DENY** Plaintiff's Motion for Summary Judgment [12], and **GRANT** Defendant Harbaugh's Motion for Summary Judgment [14]. All claims against both Defendants in their individual capacities arising under the ADA and the Rehabilitation Act should be **DISMISSED**. All remaining claims against Defendant Harbaugh should also be **DISMISSED**.

**III.   NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 3, 2017                    s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: May 3, 2017                    s/ Lisa C. Bartlett
                                      Case Manager